UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELVIN SUAREZ,<br><br>                         Plaintiff,<br><br>     -v-<br><br>CITY OF NEW YORK; New York City Police Department ("NYPD") Sergeant JANET CRUZ; NYPD P.O. JOHN DOE's 1 through 4; (The names being fictitious, as the true names and shield numbers are not presently known), In their individual capacities;<br><br>                         Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Index No. 13-CV-6396<br><br>**ECF CASE** |

This action arises out of the excessive force used by officers of the New York City Police Department in the execution of a warrant against plaintiff KELVIN SUAREZ ("SUAREZ") who was at all times non-resisting and compliant, and resulting in injuries including a fractured rib. Plaintiff SUAREZ, by his attorney JANE L. MOISAN of the Rankin and Taylor, PLLC as and for his complaint, does hereby state and allege:

### PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff SUAREZ's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, as amended, codified as 42 U.S.C. § 1983.

2. Plaintiff SUAREZ's rights were violated when officers of the New York City Police Department ("NYPD"), in the course of executing a warrant, used excessive force against plaintiff SUAREZ, causing serious injury and breaking his rib.

3. Plaintiff SUAREZ seeks an award of compensatory and punitive damages and attorneys' fees.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that plaintiff SUAREZ claim arose in the County of Bronx, within the confines of this judicial district.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

**PARTIES**

7. Plaintiff SUAREZ is and was at all times relevant to this action a resident of the County of the Bronx in the State of New York.

8. Defendant CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It has all the powers vested in it by the laws of the State of New York, the City of New York and the Charter of the City of New York. It is authorized by law to maintain a police department and a department of corrections, which act as its agents in the area of law enforcement and detention, and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and corrections, and the employment of police and correctional officers, as said risks attach to the public consumers of the services provided by the NYPD. At all times relevant, it was the employer of defendants NYPD Sergeant JANET CRUZ ("CRUZ") and NYPD P.O. JOHN DOE's 1 through 4.

9. Defendants NYPD Sergeant JANET CRUZ and NYPD P.O. JOHN DOE's 1 through 4 (the name "John Doe" being fictitious, as the true names and shield numbers are not presently known) (collectively referred to herein as "individual defendants") are and were at all times

relevant herein, officers, employees and agents of the NYPD. The individual NYPD defendants are being sued herein in their individual capacities.

10. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

11. The acts of the individual defendants hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of plaintiff SUAREZ's rights.

12. At all relevant times, the individual defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## STATEMENT OF FACTS

13. The incident alleged herein occurred principally on August 24, 2012 at approximately 7:30 a.m. and thereafter at 285 East 139th Street, in the County of the Bronx in the State of New York.

14. Upon information and belief, and the time and location supra, defendants CRUZ and DOE's 1 through 4 entered plaintiff SUAREZ's home by force while he slept in his bed.

15. Upon information and belief, defendant DOE 1, having rushed to plaintiff SUAREZ's bedroom, threw plaintiff to the floor.

3

16. Upon information and belief, despite that plaintiff was compliant and non-resistant and laying with his belly to the floor, defendant DOE 1 put his boot to plaintiff SUAREZ's head and delivered unprovoked kicks to plaintiff's body and kneed plaintiff with such excessive force as to fracture plaintiff's left 11th rib and cause intra-abdominal damage.

17. As a result of the beating, plaintiff SUAREZ was also left with cuts and bruising to his face.

18. Upon information and belief, defendant DOE 1 then handcuffed plaintiff SUAREZ, locking the cuffs so tightly as to injure plaintiff's nerves and cut through plaintiff's flesh and cause swelling and pain to his wrists.

19. Upon information and belief, supervisory defendant SGT. CRUZ instructed, witnessed and failed to intervene in defendant DOE 1's use of force against plaintiff SUAREZ and failed to subsequently remedy or redress the conduct.

20. Upon information and belief, defendant DOE's 2 through 4 witnessed the clearly unconstitutional use of force against plaintiff SUAREZ and failed to intervene in the violation of plaintiff's constitutional rights.

21. As a result of defendants' conduct, plaintiff SUAREZ has suffered physical and mental pain, aggravation to existing conditions, and suffering and mental anguish.

### FIRST CLAIM
### DEPRIVATION OF RIGHTS
### UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

22. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

23. Defendants, under color of state law, subjected the plaintiff to the foregoing acts and omissions, thereby depriving plaintiff of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including, without

limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of his person, including the excessive use of force; and (b) freedom from deprivation of liberty without due process of law.

24. Defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

## SECOND CLAIM
## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

25. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

26. By failing to remedy the wrongs committed by his or her subordinates, in failing to properly train, screen, supervise, or discipline his or her subordinates, and by personally participating in the constitutional injuries set forth above, supervisory officer defendant SGT. CRUZ, in his individual capacity caused damage and injury in violation of plaintiff's rights guaranteed under the United States Constitution, including its Fourth and Fourteenth Amendments, through 42 U.S.C. § 1983.

27. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM
## FAILURE TO INTERVENE – FOURTH AMENDMENT – 42 U.S.C. § 1983

28. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

29. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe

another member of the Police Department or other law enforcement agency employing unjustified and excessive force against a civilian.

30. Defendant DOE 1's use of force against plaintiff was obviously excessive and unjustified under the circumstances yet the individual defendants failed to take any action or make any effort to intervene, halt or protect the plaintiff from being subjected to excessive force by defendant DOE 1.

31. The individual defendants' violations of plaintiff's constitutional rights by failing to intervene in other defendants' clearly unconstitutional use of force against plaintiff resulted in the injuries and damages set forth above.

## FOURTH CLAIM
## *MONELL* CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983

32. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

33. Defendants' acts and omissions described above were carried out pursuant to the CITY's overlapping customs and practices which were in existence on August 24, 2012 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the CITY and its agency, the NYPD.

34. The acts complained of were carried out by NYPD Official DOE in his capacity as a police official pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

35. The aforementioned custom and practice of the CITY and the NYPD include, but are not limited to, the use of excessive force on arrestees who offer no resistance or are already restrained, controlled and compliant, as plaintiff was in this case.

36. The existence of aforesaid unconstitutional custom and well-settled practice may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the CITY:

   a. Tyler v. City of New York, 12-CV-1975 (JBW) (CLP) (E.D.N.Y.) (in retaliation for speech protected by the First Amendment, two NYPD officers sweep the legs out from under an already-handcuffed arrestee, causing the top of his head to collide with the pavement, causing a substantial laceration which required nearly a dozen stitches and staples);

   b. McKie v. City of New York, 12-CV-2070 (JG) (VVP) (E.D.N.Y.) (NYPD officers use pepper spray upon an individual who was under arrest, was prone and compliant with officers commands, and whose arm was pinned beneath his and the officers' combined weights during the entire use of force);

   c. Gad Alla v. City of New York, 11-CV-892 (FB) (RLM) (E.D.N.Y.) (NYPD officer uses catastrophic force to the side of an arrestee's head, even though the arrestee was compliant and prone, and even though multiple officers had their hands on his back, controlling his movements);

   d. Thompson v. City of New York, 10-CV-3603 (ARR) (SMG) (E.D.N.Y.) (while arrestee is handcuffed and compliant, NYPD officers use their Asp, or expandable metal baton, to beat plaintiff and also apply pepper spray to his face without cause);

   e. Zabala v. City of New York, 3771/2010 (Sup. Ct., Kings Co.) (NYPD officers severely beat and TASER a compliant, prone, bloodied and semi-conscious suspect after he had surrendered and was surrounded on all sides by police officers);

   f. Ashe v. City of New York, 09-CV-9696 (GBD) (THK) (S.D.N.Y.) (NYPD officers beat and use pepper spray upon two arrestees even though they were both already handcuffed and compliant);

   g. Moise v. City of New York, 09-CV-9855 (DC) (JLC) (S.D.N.Y.) (NYPD officers beat and use pepper spray upon a compliant arrestee while he was already in handcuffs); and

   h. King v. City of New York, 07-CV-4757 (FB) (JO) (E.D.N.Y.) (NYPD officer rear-cuffs compliant arrestee for possession of marijuana and places him prone on the pavement, then kicks him in the face and shoves his face into pavement).

37. Moreover, the Civilian Complaint Review Board ("CCRB") is a CITY agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.[1]

38. When it does, however, NYPD Police Commissioner Raymond Kelly controls whether the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s).

39. Since 2005, during Commissioner Kelly's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions."

40. Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008.

41. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.[2]

42. As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007.

---

[1] In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). *See*, CCRB Jan.-Dec. 2007 Status Report at p. 19, *available at* http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted de facto policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

[2] Christine Hauser, *Few Results for Reports of Police Misconduct*, New York Times, October 5, 2009, at A19.

43. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[3]

44. The existence of the above-described well-settled and widespread custom and practice – of using unnecessary and unreasonable force against arrestees who are adequately restrained or even handcuffed – is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the CITY, including, without limitation, Commissioner Kelly.

45. The defendants' actions herein resulted from and were taken pursuant to the above-mentioned well-settled and widespread customs and practices of the CITY, which are implemented by members of the NYPD. They do so with the knowledge and approval of their supervisors, commanders and Commissioner Kelly who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, <u>inter alia</u>, in sworn testimony, official reports, in statements to the CCRB and the NYPD's Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

46. All of the foregoing acts by defendants deprived plaintiff of federally protected rights, including but limited to the constitutional rights enumerated above.

---

[3] Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police*, August 20, 2008.

47. Defendant CITY knew or should have known that the acts alleged herein would deprive plaintiff of his rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

48. Defendant CITY is directly liable and responsible for the defendants' acts because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline him – along with scores of other NYPD officers – and because it repeatedly and knowingly failed to enforce the rules and regulation of defendant CITY and to require compliance with the Constitution and laws of the United States.

49. Despite knowledge of such practice and/or custom, these supervisory and policy-making officials of the NYPD and the CITY, including Commissioner Kelly, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

50. The aforementioned custom of using unprovoked force against arrestees who are adequately restrained or even handcuffed is evidenced by the acts described above.

51. Specifically, pursuant to the aforementioned practice and/or custom, defendant DOE 1 felt empowered to exercise unreasonable and wholly unprovoked force against plaintiff, apparently without fear that such use of force would result in disciplinary action or termination by the NYPD.

52. Plaintiff's injuries were a direct and proximate result of defendant CITY and the NYPD's well-settled and widespread custom and practice at issue in this litigation.

53. Defendants' actions resulted from and were taken pursuant to the well-settled and widespread custom and practice of the CITY, which implemented by agents or employees of the NYPD, of employing wholly unprovoked and excessive force against persons who are adequately restrained and pose no threat to officer safety.

## **JURY DEMAND**

54. Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

a. That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

b. That he be awarded punitive damages against the individual defendants; and

c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d. For such other further and different relief as to the Court may seem just and proper.

Dated:     New York, New York
           September 10, 2013

                                    Respectfully submitted,

                                         /s/
                         By:    _____
                                    Jane L. Moisan
                                    Rankin & Taylor, PLLC
                                    *Attorneys for the Plaintiff*
                                    11 Park Place, Ste. 914
                                    New York, New York 10007
                                    t: 212-226-4507

11

Email: Jane@DRMTLaw.com